## HUGH LIGON v. THE STATE.

### No. 585.  Decided May 11, 1910.

**1.—Aggravated Assault—Charge of Court—Reasonable Doubt—Words and Phrases.**

Where, upon trial of aggravated assault, the defendant submitted a requested charge which omitted the word "reasonable" in front of the word "doubt," the same was correctly refused; and where the court properly instructed the jury on the issue presented by the special charge, there was no error.

**2.—Same—Evidence—Officer—Knowledge of Defendant.**

Upon trial of aggravated assault upon an officer, and that defendant had knowledge of this fact, there was no error in admitting testimony of the previous arrest of defendant by the officer to show that the defendant knew that the injured party was an officer.

**3.—Same—Evidence—Bill of Exceptions—Practice on Appeal.**

Where, upon appeal from a conviction of aggravated assault, it appeared from the record that the defendant complained that the county attorney examined the witness by handing him a paper and reading different statements therefrom, but the bill of exceptions failed to show what the statements were, the same could not be considered.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of aggravated assault committed upon an officer, the evidence sustained the conviction, the same will not be disturbed.

Appeal from the County Court of Scurry.  Tried below before the Honorable C. R. Buchanan.

Appeal from conviction of aggravated assault; penalty, a fine of $25 and thirty days confinement in the county jail.

The opinion states the case.

No brief on file for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of an aggravated assault upon an officer in the discharge of his official duty.

The evidence shows that Chapman was constable of Precinct No. 1 in Scurry County.  On the night of the 24th of December, or rather about two o'clock in the morning of the 25th, he was standing on the sidewalk about twenty or thirty feet from the entrance of a poolroom. While there he saw four or five men down the sidewalk west of him. They were talking.  Shortly afterwards they came in his direction, one singing pretty loudly, and as the singer approached the officer he began cursing and swearing, and continued singing.  The man doing the cursing and swearing and singing was Henry Harless.  When they reached the officer and just as Harless got opposite to where he was he staggered up against the officer, saying as he did so, "Chapman,

we are drunk as hell, aint we?" Chapman replied, "I have not had a drop." Harless moved as if to put his hand in his coat pocket and said, "Do you want something?" Chapman then turned to Harless and told him he was an officer of the law, and that as such officer it was his duty to preserve the peace, and that if he did not behave himself he would have to arrest him. Harless muttered something of inquiry as to who in the hell he was, whereupon Chapman told him that the people had elected him constable of the precinct, and that he expected if the truth was known that he, Harless, had helped them to do so. The officer says: "I was reasoning the matter with him and telling him he would have to behave himself, when just at this time I was struck from behind on the back of the neck. The blow staggered me against Harless so hard that Harless fell on the sidewalk, and I would have fallen on him if I had not caught on Harless or the sidewalk with my left hand. As I recovered myself and began to struggle I looked over my left shoulder and saw Hugh Ligon near me and in position of recovering himself from having struck me. I saw him lowering his arm from the blow. Just at this instant Ligon broke into a run down the sidewalk in the direction from which these men had come. As I regained my feet I drew my pistol and cocked it all at the same time. As I brought the pistol around in front of me, Bud Dawson grabbed the pistol and jerked it and the pistol was discharged. I know Hugh Ligon struck me because as I recovered myself he was the only man in a position to have struck me, and I saw his arm as he lowered it from the blow." This witness places the other parties present in such position they could not have struck the blow. There is other testimony to the effect that Ligon occupied the position in which he was placed by this witness. Ligon introduced evidence to the effect that he did not strike Chapman. This is a sufficient statement of the evidence. The court charged aggravated and simple assault. The conviction was for aggravated assault, the punishment being assessed at a fine of $25 and thirty days imprisonment in the county jail.

1. Appellant asked the following instruction, which was refused: "You are charged that before you can convict this defendant you must believe that the defendant and no other struck the witness, Chapman, and if you find and believe that Chapman was struck, yet if you have a doubt in your mind you should acquit." The court charged the jury that if they should find beyond a reasonable doubt that appellant committed the assault and battery upon Chapman and they should further find he was an officer in the discharge of his duty, they should convict him. They also submitted the issue of simple assault, and further instructed the jury that in a criminal action the defendant is presumed to be innocent until his guilt is established by legal and competent evidence. The court signing the bill of exceptions to the refusal to give the requested charge, states that he did so because tho

word "reasonable" was left out in front of the word "doubt." The charge asked by appellant was more favorable than the law justified. It is not every doubt of the sufficiency of the facts that will justify an acquittal. The law provides that it must be a reasonable doubt. The court instructed the jury they would have to find beyond a reasonable doubt that appellant did strike Chapman before they could convict. In view of the entire charge given we are of opinion that the refusal of the requested instruction was not of sufficient importance to require at our hands a reversal of the judgment.

2. Another bill of exceptions recites that during the progress of the trial Chapman testified as follows: "That he had some four or five months previous to the difficulty on the 25th day of December, 1909, arrested the defendant, Hugh Ligon, for being drunk in the town of Snyder." Objection was urged to the effect that this testimony was in no way material in the trial of this case, and could serve but one purpose, which was to put defendant in a bad light before the jury and prejudice him in their minds. The bill is qualified with the explanation "that the witness Chapman was not asked if he had ever arrested the defendant, Hugh Ligon, for being drunk prior to December 25, 1909, nor did the witness Chapman testify that he had arrested the defendant, Hugh Ligon, prior to December 25, 1909, for being drunk, but the witness Chapman did testify that he had arrested defendant, Hugh Ligon, prior to December 25, 1909, but did not state what for, nor was he asked what for. The testimony of Chapman was admitted in this particular because it showed or tended to show whether or not the defendant knew or had good reason to know whether or not the witness Chapman was an officer on December 25, 1909." This is the qualification of the judge. As this bill is qualified we are of opinion the testimony was properly admitted. It was alleged in the information as a means of aggravation that appellant knew at the time that Chapman was an officer, and further that he had been so informed at the time, etc.

3. Another bill of exceptions recites that the county attorney took from his pocket a paper with some writing on it and passed it up to the witness, Matthews, and asked if that was his signature, and read different statements from the paper in the presence and hearing of the jury, and asked the witness if said statements were true or false, to all of which defendant then and there excepted, for the reason that said writing was not shown to have been taken before any court authorized to take such testimony, or before any officer authorized to administer oaths, and was calculated to mislead the jury and prejudice the defendant's rights before the jury. As this bill is presented, it can not be considered. This may or may not have been error, but the bill fails to show what the statements were which it is alleged were read to the jury. We are unable to say whether they were of sufficient

importance to affect the case in any way, and whether or not under the circumstances it was permissible to read these statements. If they were read for the purpose of impeaching and proper predicate had been laid, they may have been admissible. In any event, as the bill is presented, we are unable to revise these rulings.

4. It is contended that the evidence is not sufficient. We are of opinion that it is.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*